IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

JANE DOE, a pseudonym,

      Plaintiff,

                          CASE NO.: 2023-CA-014866-O
vs.                           DIVISION: 34

NEW START CITY, INC., a Florida
Corporation, and 4201 ORLANDO
INC., a Florida Corporation,

      Defendants.

_____/

## **FIRST AMENDED COMPLAINT**

     Plaintiff, JANE DOE ("Doe" or "Plaintiff"), by and through her undersigned counsel, brings this Complaint for damages against Defendants, NEW START CITY, INC., a Florida Corporation ("NEW START CITY"), the property manager of 4201 S. Orange Blossom Trail, in Orlando, and 4201 ORLANDO INC., a Florida Corporation ("4201 ORLANDO"), the property owner of 4201 S. Orange Blossom Trail in Orlando (collectively "Defendants"). In support of these claims, Plaintiff avers:

## **INTRODUCTION**

1.   This is an action against the owner and operator of a motel referred to as "New Start", which benefited from renting hotel rooms, while the Defendants knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, on their hotel premises because of their misfeasance and nonfeasance.

2.   New Start was a criminal entity masquerading as a motel.

3.   At all material times, New Start was operated, managed, supervised, facilitated and

1

controlled by NEW START CITY.

4.   At all material times, New Start was owned, maintained and controlled by 4201 ORLANDO.

5.   NEW START CITY and 4201 ORLANDO knew or should have known that sex trafficking repeatedly occurs under their flag and at their property. Rather than taking timely and effective measures to thwart this epidemic, Defendants has instead chosen to engage in, conspire, and profit from the open and obvious presence of sex trafficking and drug sales on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

6.   New Start has a fence surrounding the perimeter of the property and one point of entry and exit to that fenced in area that is closed off by a gate.

7.   NEW START CITY employs security guard(s) who control who is allowed to enter by confirming which trafficker or drug dealer the potential customer is seeking to visit, what their illegal purpose is on the property, or they must be "vouched for" by someone already known to the security guard.

8.   New Start allows drug dealers and sex traffickers to set up drug stores and brothels on their property.  These illegal "stores" flourish because of the verification of criminal intent by the security guard to enter the property.

9.   At all material times, both 4201 ORLANDO and NEW START CITY had knowledge, or should have known, of the prevalence of sex trafficking at their establishment.

10.  Every, or almost every, patron at New Start was a drug addict and/or was being trafficked by a sex trafficker.

11.  JANE DOE was a young female who, at all material times, was addicted to heroin and was being trafficked by a well-known trafficker ("Trafficker") at New Start from 2012 – 2014.

12.  JANE DOE's trafficker forced and coerced JANE DOE to engage in commercial sex acts at New Start.

13.  Sufficient warning signs were present to put New Start on notice that JANE DOE was a victim of sex trafficking and was engaging in commercial sex acts as a result of force, fraud, or coercion.

14.  Trafficker, 4201 ORLANDO, and NEW START CITY took part in a common undertaking or enterprise involving both risk and potential profit.

15.  At all material times, 4201 ORLANDO and NEW START CITY aided, concealed, confined, benefitted and profited from sex trafficking, drug sales, and other criminal activity that was occurring on its premise.

16.  At all material times, 4201 ORLANDO and NEW START CITY knew or should have known that a trafficker was recruiting, harboring, providing, and advertising JANE DOE, while buyers were obtaining, patronizing, and soliciting on their premises and yet instead of rectifying the foreseeable risks, continued to benefit from the sex trafficking of JANE DOE that was occurring and would continue to occur on their hotel premises.

17.  At all material times, New Start was engaged in the act of renting rooms and providing access to their property, causing the harboring of JANE DOE by means they knew or should have known involved force and coercion for the purpose of commercial sexual acts.

18.  The Plaintiff brings this action for damages pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. § 1595, against NEW START and 4201 ORLANDO, who knowingly benefited from a venture that they knew, or should have known, to be engaging in human trafficking in violation of 18 U.S.C. §§ 1591(a) and 1593A, and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking

venture in which Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of the TVRPA.

19. This action is also for:

    a.  civil remedies for criminal practices,

    b.  negligent hiring, supervision, and retention, and

    c.  premise liability.

## PARTIES, JURISDICTION, AND VENUE

20. At all material times to this complaint, Plaintiff, JANE DOE, is an adult, is a U.S. citizen, is a resident of the State of Florida, and is *sui juris*.

21. Plaintiff was a human trafficking victim and therefore seeks to file this action pseudonymously, using her initials instead of her actual name.

22. Plaintiff is using a pseudonym because of the highly personal nature of her victimization and because of the serious risk of harm to which she would be exposed by her former traffickers if she brought this suit in her actual name.

23. Plaintiff's right to privacy and security outweigh the public interest in knowing her identification. Plaintiff's legitimate concerns also outweigh any prejudice potentially caused to Defendant by allowing Plaintiff to proceed pseudonymously.

24. At all material times to this complaint, NEW START CITY, INC. was a Florida Corporation. NEW START CITY was the management company at New Start, with its principal place of business located at 4201 S. Orange Blossom Trail, Orlando, FL 32839.

25. At all material times to this complaint, 4201 ORLANDO INC. was a Florida Corporation. 4201 ORLANDO was the owner of New Start, located at 4201 S. Orange Blossom Trail, Orlando, FL 32839, and its principal place of business was 3691 S.R. 580, #H, Oldsmar, FL 34677.

4

26.  4201 ORLANDO rents the building located upon its land to NEW START CITY to do business as a public lodging establishment.

27.  This Court has jurisdiction in that Plaintiff seeks monetary damages far exceeding the jurisdictional minimum of this Court of $50,000.00, exclusive of interest, costs, and attorney's fees.

28.  Venue properly lies in this judicial circuit in that the misconduct and other tortious acts that are the subject of this lawsuit were committed.  As such, venue is proper in Orange County, Florida.

<u>**FACTUAL ALLEGATIONS**</u>

  **A.  Defendants are Innkeepers**

29.  At all times material to this complaint, the NEW START CITY was a public lodging establishment pursuant to Chapter 509 of the Florida Statutes.

30.  Upon information and belief, at all material times, NEW START CITY was operating a public lodging establishment in the State of Florida without a license to do so from the Florida Department of Business and Professional Regulations.

31.  4201 ORLANDO was the owner of New Start.

32.  NEW START CITY was the management company and operator of New Start.

33.  In Florida, hotels and motels are "innkeepers" and owe patrons a special duty of care.

34.  Both Defendants are innkeepers.

35.  An innkeeper has a special relationship with its guests which gives rise to a duty to protect those guests against unreasonable risk of harm.

36.  An innkeeper owes its guests a duty of reasonable care for their safety.

37.  An innkeeper's knowledge, as here, of prior criminal activity on or around the grounds of its motel imposes a duty to take adequate security precautions to deter the type of criminal activity

5

which caused harm to a guest.

38.   The relevant motel premise includes the front lobby, common areas, walkways, stairwells, private rooms, designated parking area, and curtilage.

**B.   Defendants Failed to Train Their Employees or Implement Policies and Procedures to Detect, Deter, and Prevent Sex Trafficking**

39.   As with banking regulations that are geared to dismantle and counter terrorism networks, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[1]   Despite the two campaigns releasing online resources and toolkits and making them publicly accessible to any entity concerned with human trafficking,[2] Defendants continued to look the other way while benefiting from what they knew or should have known was sex trafficking.

40.   Upon information and belief, at all times relevant hereto, Defendants had access to ample education and training tools, but failed to train their staff to identify, deter, and prevent human trafficking at New Start.

41.   Upon information and belief, at all times relevant hereto, Defendants did not implement policies that would remove financial incentives and other benefits derived from the commercial sex acts of sex trafficking victims at New Start.

42.   Although it is undoubtedly a company's responsibility to ensure it and its owners, agents, employees, operators, managers and/or contractors are following the law, Defendants choose to ignore the obvious and tell-tale signs of the sex trafficking of Plaintiff, instead continuing to derive

---

[1] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.
[2] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry.

benefits from what they knew or should have known was sex trafficking.

**C. NEW START CITY and 4201 ORLANDO Created an Environment at New Start that Encouraged and Promoted Criminal Activity, to include Sex Trafficking**

43. At all relevant times to this complaint, 4201 ORLANDO was the owner and in possession of the property located at 4201 S. Orange Blossom Trail in Orlando.

44. At all relevant times to this complaint, NEW START CITY employed less than five people to operate and manage the business.

45. Upon information and belief, at all times relevant to this complaint, neither 4201 ORLANDO or NEW START CITY trained their employees about sex trafficking.

46. Upon information and belief, at all times relevant to this complaint, neither 4201 ORLANDO or NEW START CITY developed or implemented any procedures, protocols, or standards to detect and/or deter sex trafficking on New Start's premise.

47. Instead, 4201 ORLANDO and NEW START CITY engaged in the criminal venture with the sex traffickers, both encouraging and profiting from the criminal activity.  One such trafficker that was able to operate with impunity at New Start was JANE DOE's Trafficker.

48. 4201 ORLANDO and NEW START CITY knew or should have known that the property was being used to run a criminal enterprise, in which New Start was a haven for sex trafficking and drug dealing.

49. At all material times to this complaint, this property was a lodging establishment, but was not licensed as a lodging establishment with the Department of Business & Professional Regulation.

50. At all material times, this property was decrepit.

51. Many of the customers on property were visibly under the influence of substances.

52. Drug use was visible and abundant, and drug paraphernalia littered the ground.

53. The motel was surrounded by a fence so that there is only one way in and one way out of the property.

54. In order to control who was entering and exiting the property, a security guard manned the gate that allows people to enter or exit the property.

55. When a potential guest came to the gate, the security guard would allow entrance if:

    a. The person is trustworthy so that law enforcement was not alerted.  This was established if the security guard knew the person or someone he knew vouched for the person seeking entrance.

    b. The person seeking entrance had to pay the security guard a fee for coming into the property.

    c. The person seeking entrance had to state their purpose (buy drugs, purchase sex, find their "pimp", etc.)

2. If the person was permitted entrance, he or she would also have to "tip" the front desk for their time on the property.

3. For the criminals, like Trafficker, that lived and operated their criminal venture out of New Start, this financial requirement for the freedom to operate their criminal venture openly at New Start was understood.

4. At all times material to this complaint, Trafficker knew the manager at New Start and had a working relationship with him, in which he would pay the manager, and in exchange, the manager would be allowed to operate his sex trafficking and drug dealing venture in plain sight, would allow Trafficker to tell the security guard to admit his criminal clients to the property, would not call the police on Trafficker, and would employ "lookouts" who would warn Trafficker if law enforcement was about to raid the property so he could escape.

8

5.     When Trafficker would post his victims online (meaning he would put up an advertisement to sell his victims to sex buyers on such as a website) and anticipated a lot of buyers were about to come to the property for commercial sex, he would go to the front desk, or send one of his victims to the front desk to pay the manager in advance so as to be "respectful."

6.     One of the employees was addicted to crack cocaine.  If that person was present, Trafficker would also offer some crack cocaine to that employee as a payment as well.

7.     If buyers of sex visited for a commercial sex encounter and had not paid the fee in advance, the manager would come knock on the door and demand the payment.  When collecting the fee, the manager would ask "is that date with you" or "is that call with you?"

8.     The terms "date" and "call" are common phrases in sex trafficking to refer to the buyer of commercial sex.

9.     The rooms did not have a room phone within them.  Among other things, this ensured that the victims would have no way to call out for help unless their trafficker allowed them access to a cell phone.  Such a setup made working out of New Start desirable to a trafficker that wanted his victims to have no means of escape.

10.   New Start had one or two employees serve as "lookouts."

11.   If the police came to the gate and sought entrance, the lookouts would contact Trafficker and other drug dealers / sex traffickers that lived at New Start on their cell phones to give them a tip that law enforcement was about to raid the facility.

12.   Trafficker and/or his victims were expected to tip the lookout each day, per "date."

13.   In addition, Trafficker had a lot of drug sales in and out of New Start, which meant his client count was high and he owed a tip for each client to the manager and the lookout.  Because he paid so well, the manager rewarded him by giving him the only room with a camera of the

parking lot so that he could see the police coming before they entered the hotel.[3]

14.   New Start did not have housekeeping and the motel guests were expected to bring their own sheets and clean their own bathroom.

15.   The manager of New Start periodically engaged in commercial sex acts with the various girls on property.  He would make the arrangements with their respective traffickers to negotiate payment.

16.   At all times, the New Start parking lot was constantly filled with people and drug deals would happen in the open in the parking lot, behind the perimeter fence.

**A.  The Sex Trafficking of JANE DOE at New Start**

17.   At all relevant times to this complaint, JANE DOE was a victim of sex trafficking.[4]

18.   Starting in 2012 and continuing through 2014, Trafficker sex trafficked JANE DOE.

19.   Over the course of two years, Trafficker lived at New Start and ran an illegal drug store and sex trafficking business out of New Start.  JANE DOE lived at New Start with Trafficker.

20.   When JANE DOE would enter the property, she was allowed in because each time either:

    a.   Trafficker paid her entrance fee and they were allowed in together;

    b.   When she went in alone, she would have to be vouched for by another person on the property as being one of Trafficker's girls, and had to pay the entrance fee, or

    c.   Once the gate guard realized JANE DOE belonged to Trafficker and associated her with him, she was allowed to enter without being vouched for, so long as she paid the entrance fee.

---

[3] Drug addiction is a well-established form of coercion and sex traffickers use addiction and the fear of withdrawal symptoms to further coerce and control their victims.  The sale of drugs is inextricably intertwined with the sale of people.

[4] JANE DOE has been verified by a Florida Court to be a victim of human trafficking.

21.   Trafficker required JANE DOE to "walk the trail"[5] which was the phrase used to mean that she was to dress scantily so that it was apparent she was for sale and walk up and down on Orange Blossom Trail until a car stopped and paid her to engage in commercial sex acts.

22.   JANE DOE would "walk the trail" directly in front of New Start, dressed in her underwear, and would often bring dates back through the gate and to her room to engage in commercial sex acts.

23.   Trafficker would force and coerce JANE DOE to post advertisements for sex online on Backpage.com[6] and similar websites.

24.   When potential dates would call her, Trafficker had instructed JANE DOE what she was to say to the potential dates and how much she was to charge.

25.   When dates arrived at the front gate, the date was told to say he was there to visit with JANE DOE.

26.   The security guard at the front gate knew that JANE DOE was Trafficker's "girl," that he "owned" her, and would allow the date into New Start, knowing his purpose was to engage in commercial sex acts with JANE DOE for Trafficker's profit.

27.   Trafficker frequently referred to JANE DOE as his "bitch" and other derogatory names that are common in sex trafficking.  He called her this in front of the New Start employees.

28.   The traffic coming into and out of the motel was heavy. JANE DOE saw an average of ten (10) "dates" per day.

29.   Each "date" was admitted to the property for a short visit with JANE DOE by the security

---

[5] "The Trail" is a local term used to refer to Orange Blossom Trail.
[6] Backpage.com was a sex trafficking website that allowed traffickers to post advertisements of their "wares" and then sex buyers could select their victim, contact the number, and arrange to meet to engage in commercial sex acts.

guard and was watched and observed by the lookout(s).  Each of these staff members witnessed the frequency of the dates coming and leaving the property, as well as their purpose in being there, as they would make sure they collected their "cut."

30.  For each "date," JANE DOE would collect the money and at the conclusion of the date, Trafficker would then take the money from JANE DOE.

31.  JANE DOE was heavily addicted to heroin, which was used as a tool to control her.  When JANE DOE was "paid," Trafficker usually kept the money and gave her heroin instead.

32.  JANE DOE was expected to earn a set amount of money.  Trafficker knew that she would become "dope sick" if she did not get heroin and mandated that she earn enough money for him before he would give her the drug dose that would prevent her from becoming sick.

33.  In 2014, JANE DOE overdosed in one the rooms at New Start and using heroin provided to her as part of her trafficking experience.

34.  JANE DOE was taken to the hospital where life-saving medical care was administered.

35.  After her release from the hospital, New Start allowed her back onto their property with Trafficker to continue the sex trafficking venture and activity.

36.  Trafficker was also extremely violent to JANE DOE and his other victims on numerous occasions.

37.  Trafficker became enraged with JANE DOE one day and ordered that another victim beat JANE DOE in the New Start parking lot.

38.  JANE DOE was beaten until she was bruised, bloody, and almost unconscious while Trafficker watched.  This took place in the parking lot, visible to the staff and all the motel guests.

39.  NEW START did not contact law enforcement or an ambulance and took their instructions from Trafficker as to how to handle this situation.

40.   JANE DOE lived in constant fear that Trafficker would harm or kill her and obeyed him to avoid being harmed.

41.   Trafficker forced and coerced JANE DOE to engage in commercial sex acts as part of a continual and ongoing sex trafficking venture from 2012 through 2014.

42.   As a direct and proximate result of Defendant's actions, JANE DOE was seriously harmed including, without limitation, physical, psychological, financial, and reputational harm.

**B.  Equitable Tolling of Claims**

43.   Trafficker's criminal sex trafficking of Plaintiff took place from 2012 - 2014.

44.   JANE DOE was prevented from previously pursuing her claims.

45.   Although JANE DOE ceased to be victimized by Trafficker, she was still a victim of sex trafficking at the hands of a subsequent trafficker.  Her victimization continued until she was finally able to escape years later.

46.   Traffickers use force and coercion to maintain full and total control over their victims and do not allow their victims the luxury of independent thought, or anything less than total obedience and submission.  JANE DOE was no exception.

47.   While JANE DOE was a victim of trafficking, reporting what occurred, speaking to a lawyer, or pursuing a lawsuit were not possible, as her trafficker would have threatened her life or physically harmed her for even considering such a thought.

48.   Additionally, in 2014, Plaintiff had a brain scan that showed a large tumor in her brain.

49.   Plaintiff began a rigorous treatment plan for the cancer.

50.   For several years, Plaintiff was placed on disability and experienced a cognitive impairment from the tumor.

51.   As of the filing of this lawsuit, the cognitive impairment has been eliminated and Plaintiff

sought to bring these claims as soon as reasonably possible after restoration to full cognitive functioning.

### COUNT I
**BENEFITING FROM A SEX TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, 18 U.S.C. §§ 1591(A)(2) AND 1595**
*(Defendants New Start City, Inc. & 4201 Orlando, Inc.)*

52.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-51, as if fully set forth in this Count.

53.   Defendant knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(2) and 1595(a), occurring within the territorial jurisdiction of the United States.

54.   Defendant's conduct was in or affected interstate and/or foreign commerce.

55.   Trafficker recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, and/or solicited JANE DOE.

56.   Plaintiff was engaging in commercial sex acts at New Start, which was caused by Trafficker's force, threats of force, fraud and/or coercion.  Trafficker physically beat up Plaintiff and he withheld drugs to cause her to become "dope sick" if she did not engage in commercial sex acts for his profit.

57.   Plaintiff was visibly on drugs and the manager of New Start knew that Trafficker sold drugs and people, to include JANE DOE.

58.   Trafficker, 4201 ORLANDO, and NEW START CITY took part in a common undertaking or enterprise involving both risk and potential profit wherein Trafficker ran a criminal sex trafficking and drug dealing operation out of New Start and all three financially benefited from the same.

14

59.  NEW START CITY, 4201 ORLANDO, Trafficker, and JANE DOE received something of value for engaging in sex acts.

    a.   Trafficker received financial compensation for JANE DOE's sex acts.

    b.   NEW START CITY received financial compensation for JANE DOE's sex acts through room rentals, tips, and payoffs to employees.

    c.   4201 ORLANDO received financial compensation for JANE DOE's sex acts through the property rent used to allow NEW START CITY to operate and manage New Start.

    d.   JANE DOE received drugs so that she did not become sick from withdrawal symptoms as compensation for engaging in sex acts.

60.  NEW START CITY and 4201 ORLANDO knowingly benefited, or should have known that it was benefiting, from assisting, supporting, or facilitating a violation of 1591(a)(1).

61.  Defendant's conduct has caused JANE DOE serious harm including, without limitation, physical, psychological, financial, and reputational harm.

**COUNT II**
**FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES**
**FLORIDA STATUTE § 772.104**
***(Defendants New Start City, Inc. & 4201 Orlando, Inc.)***

62.  Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-51, as if fully set forth in this Count.

63.  Defendants NEW START CITY, 4201 ORLANDO and Trafficker, with criminal intent, conspired to, endeavored to, and/or received proceeds from the sex trafficking of JANE DOE, directly or indirectly, from a pattern of criminal activity.

64.  Defendants NEW START CITY, 4201 ORLANDO and Trafficker, through a pattern of criminal sex trafficking and drug distribution activity, conspired to, endeavored to, or did actually

acquire or maintain, directly or indirectly, control of the enterprise.

65. Defendants NEW START CITY, 4201 ORLANDO and Trafficker acted with the intent to establish and/or operate an enterprise.

66. Defendants NEW START CITY, 4201 ORLANDO and Trafficker are employed by and/or associated with, the sex trafficking enterprise to conduct or participate, directly or indirectly, in the enterprise through a pattern of criminal activity.

67. As a direct and proximate cause of the foregoing, Plaintiff was injured by Defendants' actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

## COUNT III
### NEGLIGENCT HIRING, SUPERVISION, AND RETENTION
#### *(Defendant New Start City, Inc.)*

68. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-51, as if fully set forth in this Count.

69. Defendant NEW START CITY through its respective employees, agents, operators, managers and/or servants negligently authorized criminals to:

    a.  rent rooms for commercial sex,

    b.  rent rooms for drug sale and use,

    c.  screen those that seek entrance to the property to ensure criminal intent, and

    d.  provided lookout services to criminal sex traffickers and drug dealers to ensure they can escape if law enforcement raids the property.

70. These actions were done after employees were explicitly made aware that Trafficker was a sex trafficker and was trafficking JANE DOE.

71. This created a foreseeable risk that Plaintiff, JANE DOE would be sold, purchased, used,

abused, drugged, beaten, and forced to engage in commercial sex acts.

72.  NEW START CITY employees, agents, operators, managers and/or servants, failed to either identify and/or report the sex trafficking and foreseeable harm to Plaintiff.

73.  NEW START CITY was in control of the hiring of agents, employees, and/or servants at New Start and was responsible for performing background checks on these agents, employees and/or servants; instructing, training and supervising said agents, employees, and/or servants; and deciding whether to terminate said agents, employees and/or servants.

74.  NEW START CITY had a duty to make an appropriate investigation of their agents, employees, and/or servants.

75.  NEW START CITY was in control of the supervising of the agents, employees, and/or servants at the hotels that they owned, operated, supervised, controlled and/or or were otherwise responsible, and was responsible for instructing, training and supervising said agents, employees, and/or servants.

76.  NEW START CITY knew or should have known that their agents, employees, and/or servants were allowing criminals to rent rooms for sex trafficking and drug dealing.

77.  NEW START CITY knew or should have known that their agents, employees, and/or servants were failing to either identify and/or report the sex trafficking and foreseeable harm of the Plaintiff and others.

78.  NEW START CITY knew or should have known that their agents, employees, and/or servants were failing to refuse continued lodging services to sex traffickers.

79.  At all material times, NEW START CITY was negligent in their hiring, employment, supervision and termination decisions regarding their agents, employees, and/or servants, and said negligent decisions caused the Plaintiff JANE DOE to be injured.

80.  It was foreseeable that NEW START CITY'S acts and omissions increased the risk that these illegal acts would regularly occur on the premises of New Start and would cause harm to the Plaintiff JANE DOE.

81.  But for the negligence and omissions of NEW START CITY, the ongoing and continual sex trafficking venture could have been prevented and/or stopped.

82.  As a direct and proximate cause of the foregoing, Plaintiff was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

## COUNT IV
### PREMISE LIABILITY
#### *(Defendants New Start City, Inc. & 4201 Orlando, Inc.)*

83.  Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-51, as if fully set forth in this Count.

84.  At all times material to this complaint, the Plaintiff, while an invitee or otherwise lawfully present upon the premises of New Start, did sustain injuries as a result of NEW START CITY and 4201 ORLANDO's actions, their respective patrons and the criminal activity carried on at New Start.

85.  NEW START CITY and 4201 ORLANDO by and through its agents, employees and/or servants, owed a duty to maintain the premises of New Start that it owned, operated, controlled, supervised and/or for which they were otherwise responsible, in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for its guests, to include Plaintiff.

86.  NEW START CITY and 4201 ORLANDO by and through its agents, employees and/or servants, owed a duty to exercise reasonable care to protect Plaintiff, by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the

18

reasonably foreseeable use of the premises of New Start that it owned, operated, controlled, supervised and/or for which they were otherwise responsible by sex traffickers, such as Trafficker.

87.   NEW START CITY and 4201 ORLANDO by and through its agents, employees and/or servants owed a duty to exercise reasonable care to keep the hotel guests of New Start, including Plaintiff, safe by implementing and enforcing security measures and proper protocols.

88.   NEW START CITY and 4201 ORLANDO by and through its agents, employees and/or servants owed a duty to safeguard Plaintiff against criminal conduct that NEW START CITY and 4201 ORLANDO could reasonably foresee happening at New Start.

89.   NEW START CITY and 4201 ORLANDO by and through its agents, employees and/or servants owed a duty to maintain New Start in a hospitable, safe and reasonable manner, as well those areas beyond the hotel's property lines for which NEW START CITY and 4201 ORLANDO had possession, custody or control thereof.

90.   NEW START CITY and 4201 ORLANDO had actual or constructive knowledge of prior similar sex trafficking and drug dealing incidents carried out at this property.

91.   NEW START CITY and 4201 ORLANDO knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the New Start would be unreasonably high without NEW START CITY and 4201 ORLANDO taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

92.   NEW START CITY and 4201 ORLANDO had actual knowledge of the dangerous condition Plaintiff was at New Start, or in the alternative, that the dangerous condition existed for a sufficient length of time that NEW START CITY and 4201 ORLANDO should have exercised ordinary care, should have known of the conditions, thereby had constructive knowledge of

Plaintiff's peril; and/or that the condition occurred with regularity at New Start and was therefore foreseeable; and/or NEW START CITY and 4201 ORLANDO should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

93.   Because sex trafficking and associated conduct was foreseeable, NEW START CITY and 4201 ORLANDO had a duty to take adequate measures at New Start to protect their guests, including Plaintiff, from being victims of continued sex trafficking.

94.   At all times material, NEW START CITY and 4201 ORLANDO, by and through their agents, servants, and/or employees, created and/or allowed the dangerous condition to exist at New Start and/or failed to keep the Plaintiff safe while she was on the premises of New Start.

95.   NEW START CITY and 4201 ORLANDO could have taken any number of corrective measures to make the dangerous conditions at New Start ceased, including but not limited to:

    a.   not accepting payments for criminal activity,

    b.   not renting rooms to known criminals or for criminal activity,

    c.   not allowing buyers of sex or "dates" to enter the premise through the gate,

    d.   not allowing buyers of drugs to enter the premise through the gate,

    e.   not notifying the criminals when the police were inspecting or raiding the property,

    f.   providing training regarding human trafficking awareness to employees, to include for how to identify individuals who may be traffickers or their victims,

    g.   establishing, implementing and/or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and

h. establishing, implementing and/or enforcing protocols on how to handle general emergency situations or manage criminal risks.

96. In failing to take any measures to report and remove the dangerous condition from the premises, NEW START CITY and 4201 ORLANDO failed to take reasonable care to protect Plaintiff, their hotel guest.

97. By providing a gatekeeper, as well as lookouts, to ensure only those with criminal intent entered the property, NEW START CITY and 4201 ORLANDO encouraged the use of the hotel premises by drug addicts, drug dealers, pimps, and criminals to run their own criminal venture to enslave, sex traffic, batter, falsely imprison, overdose, and/or gravely injure women, such as Plaintiff, who – because of their fear, mental state, financial restraints and addiction – were unable to rescue themselves.

98. NEW START CITY and 4201 ORLANDO, by and through its agents, employees and/or servants breached its respective duty owed to the Plaintiff, and was negligent by:

a. Creating a dangerous condition;

b. Failing to correct the aforementioned dangerous condition;

c. Failing to report and refuse renting to the traffickers;

d. Failing to properly and adequately maintain the premises in a reasonably safe condition;

e. Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

f. Failing to have security measures to protect the Plaintiff;

g. Failing to provide training regarding human trafficking awareness to employees and staff,

h. Failing to provide training to employees on how to identify individuals who may be traffickers or their victims of trafficking;

i. Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

j. Failing to establish, implement or enforce protocols on how to handle general emergency situations or manage criminal risks; and

k. Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

99. As a direct and proximate cause of the foregoing, Plaintiff was injured by Defendant's actions and has suffered psychological, emotional, and physical injuries, emotional distress, mental anguish, pain and suffering and the loss of enjoyment of life.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff JANE DOE demands judgment against Defendant and seeks relief as follows:

A. Award compensatory damages to Plaintiff for past and future damages for the described losses with respect to each Count;

B. Award Plaintiff reasonable attorney's fees as to Count I;

C. Award Plaintiff the costs and expenses of these proceedings as to Count I; and

D. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

1. The Plaintiff demands a trial by jury, of all so triable issues, pursuant to Fla. R. Civ. P. 1.430.

## CERTIFICATE RE: E-FILING AND E-SERVICE

**I HEREBY CERTIFY** that this Complaint was filed electronically in compliance with

Florida Rules of Judicial Administration 2.515 and 2.516(e).

Date: <u>March 21, 2024</u>                                   Respectfully Submitted,

**Lisa D. Haba**
The Haba Law Firm, P.A.
FBN: 077535
1220 Commerce Park Dr., Ste. 207
Longwood, FL 32779
T: (844) 422-2529
E-mail: lisahaba@habalaw.com

*Attorney for Plaintiff, JANE DOE*